No. 36,313

ARTHUR McCoy, *Appellee*, v. NELLIE R. COVER et al., *Appellants*.

(158 P. 2d 380)

Opinion filed May 5, 1945.

*George K. Melvin,* of Lawrence, argued the cause for the appellants.

*James F. Swoyer,* of Oskaloosa, argued the cause, and *A. C. Wilson,* of Oskaloosa, was on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action wherein the plaintiff asked judgment that the parties hold certain real estate in trust for each other and that certain deeds be set aside. Judgment was for the plaintiff. Defendants appeal.

The plaintiff is the son of Charles McCoy. The defendants are the daughter and son-in-law of Charles. The land in question is 286.54 acres in Jefferson county. It comprises one full quarter section and a fractional quarter section lying immediately south of it. For the purpose of this opinion the full quarter section will be divided into the west eighty and the east eighty while the fractional quarter will be divided into the north 63.27 acres and the south 63.27 acres.

The plaintiff alleged that on January 19, 1920, Charles McCoy conveyed to plaintiff and to Nellie R. Cover, as tenants in common, the entire tract of 286.54 acres; that at the same time the grantees in this deed, that is, plaintiff and his sister, agreed to pay Charles a thousand dollars a year as long as he should live. This agreement was fully complied with and is of no importance in this case. The petition further alleged that on January 10, 1926, Charles McCoy died and plaintiff and defendant Nellie R. Cover became absolute owners of the property as tenants in common. The petition

then alleged that on February 26, 1926, plaintiff and the defendants agreed that the property should be divided by the plaintiff taking the north half of the fractional quarter and the west half of the full quarter as his share, clear of any claim of defendants; and that defendant Nellie R. Cover should have as her share, and clear of any interest of the plaintiff, the south half of the fractional quarter and the east half of the full quarter. At that time the parties each took physical possession of the land as above described and agreed upon as their equitable portion, and ever since that date up to the time of the filing of the action have had sole possession thereof; that about the time of this oral agreement plaintiff was faced with litigation and feared the loss of his portion of this real estate and that having full knowledge of this litigation plaintiff placed the legal title of a part of his share of the real estate in the name of his sister to be held by her in trust for him until his fears of the litigation should be removed and at the same time defendant Nellie R. Cover placed the legal title to a part of her portion of this real estate in the name of plaintiff to be held in trust for her until termination of the trust; that no consideration was paid by either of the parties to the other for either of these conveyances; that during all the years that had elapsed since that time plaintiff and defendants had paid the taxes on all this real estate in equal shares; that the litigation which plaintiff feared had been disposed of; that on September 29, 1942, the plaintiff notified defendant Nellie R. Cover that he desired to terminate the trust and requested a reconveyance of the legal title of this real estate to him; that she and her husband refused to so convey it. Plaintiff in his petition also offered to terminate the trust reposed in him by defendants and to reconvey the legal title to the real estate described to them.

The prayer was that the trusts be terminated and the oral agreement for the division of the real estate be approved; that the deeds exchanged between the parties be canceled and that the title of plaintiff to the north half of the fractional quarter and the west half of the full quarter be quieted and that the defendants' title to the south half of the fractional quarter and east half of the full quarter be quieted.

The answer of the defendants was a general denial and also a specific denial that any trust agreement was entered into and an allegation that on the 26th day of February, 1926, warranty deeds were exchanged between the parties whereby plaintiff became the

owner of the fractional quarter; that plaintiff held the legal title of the fractional quarter from the 26th of February, 1926, until the year 1939, at which time he conveyed it to his son and three of his daughters as tenants in common; and that if there had been any trust agreement plaintiff's conveyance of the legal title to his children constituted a repudiation of the trust; and that he secured a reconveyance for the purpose of maintaining this action. The answer further stated that plaintiff on February 26, 1926, decided he would own and occupy the fractional quarter as his homestead and defendants at that time conveyed their interest therein to him that he might hold it for his homestead in accordance with the laws of the state, and that plaintiff deeded to defendants the full quarter and they have ever since been occupying it as their homestead.

Later defendants filed an amendment to their answer in which they pleaded that any trust agreement, if there was one, was in violation of the statute of frauds. The reply of the plaintiff was a general denial.

The court made findings of fact and conclusions of law. These findings of fact were to the effect that the whole tract was conveyed to plaintiff and defendant Nellie R. Cover as tenants in common by their father on January 19, 1920; that the contract between the parties and their father was fully carried out.

The court found that at the time of the death of his father plaintiff was involved financially to the extent of about $8,400; that his attorney had advised him in order to claim a homestead in any real estate it must be in one tract and on one side of the road and that defendants knew of this advice and of the financial trouble in which plaintiff was involved and that thereafter defendants deeded to plaintiff the fractional quarter and plaintiff deeded to defendants the full quarter; that plaintiff moved immediately to his fractional quarter and resided on the north half of it and began immediately to farm the north half of this quarter and the west half of the full quarter and continued to do so until the time of the action; that the defendants were residing on the east half of the full quarter and farmed that and also the south half of the fractional quarter. The findings then set out by years the taxes that had been paid from that time until the time of the action, and found that the plaintiff had paid half of these taxes. The court then found that on July 28, 1939, the plaintiff conveyed the fractional quarter to his children and that on July 22, 1943, the defendants notified plaintiff to vacate

the west half of the full quarter because they owned it by virtue of the deed in 1926; that after the death of Charles McCoy and the execution of the deed between the parties the exact time not being known the defendants offered plaintiff $5,000 if he would let the deeds stand and divide the properties as deeded; that this offer was refused by plaintiff and that the reasonable and equitable division of the real estate would be as it had been possessed and farmed; that following the advice of his lawyer the plaintiff took the deed to the fractional quarter claiming it as a homestead and deeded the other quarter to his sister for the purpose of defeating the claims of his creditors; and that defendants should not now be permitted to profit after so aiding the plaintiff.

The court made conclusions of law that by reason of the conduct and the acts of the defendants at the time of the execution of the deed and during the intervening years a trust between the parties resulted by operation of law and by virtue of this trust each of the parties had continuously held that part of the real estate which was in their possession in trust for the other; that the deeds involved should be set aside and the north half of the fractional quarter and the west half of the full quarter should be adjudged to be the property of the plaintiff and the south half of the fractional quarter and the east half of the full quarter should be adjudged to be the property of the defendants and the title of each should be quieted in those tracts.

The defendants filed a motion for a new trial alleging that the judgment was contrary to the evidence; that it was contrary to law; that the conclusions of law could not be derived from the findings of fact; and that on the findings of fact judgment should be for the defendants. They also filed a motion for judgment on the findings of fact. These motions were all overruled and judgment entered pursuant to the conclusions of law. From this judgment the defendants have appealed.

The theory of the appellee is that the plaintiff and the defendant, Nellie R. Cover, made an agreement as to the division of the real estate contrary to the provisions of the deeds. He argues that at the time the plaintiff gave the defendants the deed to the full quarter and the defendants gave plaintiff a deed to the fractional quarter they actually agreed that instead of holding the land, as set out in those deeds, the plaintiff was to have the north half of the fractional quarter and the west half of the full quarter, while the defendants

were to have the south half of the fractional quarter and the east half of the full quarter.

The petition pleaded a specific oral contract to that effect. The court did not find that there was such a contract. What the court did find was that the deeds were given and the land occupied and farmed by the parties, as set out in the petition, but nowhere is there any finding that this occupancy was the result of any contract by which the land was to be held other than as provided in the deeds.

The findings of fact make out a case where the defendants permitted the plaintiff to farm some land which belonged to them and in return for that the plaintiff permitted defendants to farm some land that belonged to him. The facts fall far short of proving an express trust. (See *Clester v. Clester,* 90 Kan. 638, 135 Pac. 996.)

Plaintiff next argues that even though there was no trust created by agreement there was a trust raised by implication of law. He bases that contention on the fact that at the time the deeds were given the defendants knew about his financial difficulties; that the fractional quarter was not worth nearly as much as the full quarter and that defendants could not have reached any other conclusion except the one that the full quarter was to be held in the name of Nellie R. Cover until the financial difficulties of plaintiff were passed. Plaintiff cites a number of authorities to sustain this position. We have examined these authorities and find that they depend upon the fact that the person who was in the position occupied by the defendants had been guilty of some fraud or bad faith in dealing with a person who occupied a position similar to that of this plaintiff so that it was not fair or equitable to let the person guilty of the fraud gain by it. In the case at bar the conduct of all the parties toward the creditors of the plaintiff is open to suspicion, but there is no hint in the findings of any fraudulent conduct of the defendants toward plaintiff.

Plaintiff next argues that the plaintiff should prevail because he held this land by adverse possession more than fifteen years. The record does not sustain any such a claim. It is true that the plaintiff did remain on the west eighty of the full quarter for more than fifteen years. However, he did so by permission of the defendants. Such possession is not adverse. (See *Sexton v. Holt,* 91 Kan. 26, 136 Pac. 934; also, *Finn v. Alexander,* 102 Kan. 607, 171 Pac. 602.)

The judgment of the trial court is reversed with directions to enter judgment for the defendants.