No. 18,389.

ARNOLD SEXTON, *Appellee,* v. HUGH HOLT et al.,
*Appellants.*

SYLLABUS BY THE COURT.

1. LICENSE—*Easement—Prescription—Adverse Possession.* Use under a license will not ripen into an easement by prescription, however long continued. Use according to permission to use is not adverse. To be adverse the use must be under a claim of right with the knowledge of the owner of the estate but without his consent.

2. ——— *Same.* The foregoing rules applied in an action to prevent the obstruction of a driveway between the lands of two brothers, created by oral agreement for their mutual convenience and used in common for a period of more than fifteen years.

Appeal from Dickinson district court; ROSWELL L. KING, judge. Opinion filed December 6, 1913. Reversed.

*Arthur Hurd,* and *G. W. Hurd,* both of Abilene, for the appellants.

*C. S. Crawford,* of Abilene, for the appellee.

The opinion of the court was delivered by

BURCH, J.: In a division of land among the heirs of James Sexton a tract containing 96 acres was divided between his two sons. Arnold received the east 48 acres and Henry the west 48 acres of the tract. Arnold erected a house, barn, and other improvements at a point just east of the center of the line between the two subdivisions. Henry also owned land lying north and south of that belonging to Arnold. Many years ago the two brothers established a driveway extending from Arnold's barn to the north line of the 96-acre tract. Arnold states the facts as follows:

"Q. After the division of this land, was there any agreement between you and Henry as to a roadway or driveway between your two places? A. Yes, sir.

"Q. You may state when that agreement was made, and what it was. A. Well, the agreement was that there was to be a road on the line between us for the use of both of us; we was each to give one-half, twelve feet on each side of the line.

"Q. When did you say that agreement was made? A. That was about twenty-eight years ago this summer.

"Q. You may state whether or not that was used as a road from that time on? A. Yes, sir, it was."

Arnold testified that he and Henry did some work fixing up the road some seventeen years ago. Henry established a temporary fence along the west side of the driveway, but it remained open on Arnold's side. Henry became insane, and his guardian, C. C. Wyandt, leased his land to Hugh Holt. About two years ago Holt drove some cattle down the road. Arnold Sexton objected, and said that if it occurred again he would take up the cattle and Holt would be obliged to pay for them. Holt then caused a survey to be made and built a permanent fence on Henry Sexton's land two feet west of the surveyed line. The location of the boundary was confirmed by a subsequent survey made at the instance of Arnold Sexton.

The action was brought by Arnold Sexton to enjoin the maintenance of the new fence. The court made the following findings of fact and conclusion of law:

"The common road set out and described in plaintiff's petition was created by the verbal agreement of said plaintiff and Henry C. Sexton; that the said plaintiff and Henry C. Sexton and his successors in possession have used said road as a common way under said agreement for more than fifteen years, and that by reason of said agreement and said user, the said plaintiff has acquired and now has the right to have said road kept open as a common road for the benefit of the premises of said plaintiff and said H. C. Sexton."

Judgment was rendered for the plaintiff, and the defendants appeal.

The arrangement between the two brothers was not reduced to writing. It was made for mutual conve-

nience and was allowed to rest upon mutual confidence. It gave neither one any interest in the land of the other because of the statute of frauds. Therefore nothing but reciprocal licenses were created, and use under a license will not ripen into an easement by prescription, however long continued. Use according to permission to use is not adverse. To be adverse the use must be under a claim of right with the knowledge of the owner of the estate but without his consent. (*Railway Co. v. Conlon,* 62 Kan. 416, 63 Pac. 432; *Insurance Co. v. Haskett,* 64 Kan. 93, 67 Pac. 446; *Jobling v. Tuttle,* 75 Kan. 351, 364, 89 Pac. 699; *Dotson v. Railway Co.,* 81 Kan. 816, 819, 106 Pac. 1045.) In the case of *Insurance Co. v. Haskett,* supra, there were mutual licenses.

There is neither finding nor evidence that the use of the way ever changed in character from what it was when first begun. Perhaps the conduct of Arnold Sexton at the time of the cattle episode amounted to a revocation of the license he had granted to his brother.

There is neither finding nor evidence of such a change in the situation of the licensee, or of such expenditures by him, on the faith of the license as might appeal to a court of equity. A right of way by necessity is not involved.

The judgment of the district court is reversed and the cause is remanded with direction to enter judgment for the defendants.